IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| DEBORAH J. RIGGS, ) | |
| Plaintiff ) | |
| v. ) | No. 2:06-cv-163 |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner of | |
| Social Security, ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, plaintiff's motion for judgment on the pleadings [Court File #11] will be denied, defendant's motion for summary judgment [Court File #15] will be granted, and the final decision of the defendant Commissioner will be affirmed.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the defendant in this civil action.

# I.

## *Factual Background*

Plaintiff Deborah J. Riggs is a 51-year-old female born in 1955. She went to school through the tenth grade, but later received her GED. Her vocational experience has been as a Licensed Practical Nurse and as a packer.

Plaintiff's treating physician for several years has been Dr. Steven J. Baumrucker, who has treated her for, among other things, chronic pain and diabetes mellitus Type II. In June 2004, Dr. Baumrucker noted that the plaintiff had bilateral ankle edema, probably secondary to venous statis. In December 2004, Dr. Baumrucker noted that the plaintiff had a history of depression, anxiety, fibromyalgia, Type II diabetes, allergic rhinitis, Hepatitis C, and a bilateral hearing loss. He also noted that the plaintiff suffered from narcotics overuse and was very motivated to get off of her narcotics. In January 2005, Dr. Baumrucker noted that the plaintiff had severe complaints of bilateral leg pain which was why she was originally placed on opioids. She had venous reflux and complications of venous statis but could not afford the services of a pain clinic. It was also noted that she had peripheral neuropathy secondary to diabetes mellitus. In a March 2005 report, Dr. Baumrucker noted that the plaintiff had fibromyalgia, reactive depression and diabetes mellitus with neuropathy.

In 2005, Dr. Baumrucker wrote a narrative report regarding the plaintiff's condition. He reported that she had been previously employed as an LPN and was completely unable to do her job, both due to her hearing loss and secondary to the neuropathy, fibromyalgia, and severe chronic pain. This had caused her severe depression due to the inability to support herself. He opined that the plaintiff's impairments were permanent, that she was unable to lift, sit for prolonged periods, or stand for prolonged periods. Her multiple medications caused some difficulty concentrating, but she could not function without them. Her neuropathy was likely to worsen as diabetes progressed and her fibromyalgia was unfortunately incurable, although manageable with chronic opioids. In addition to her physical restrictions, she was unable to maintain her psychological equilibrium in stressful situations due to her depression. Dr. Baumrucker diagnosed diabetes mellitus Type II, fibromyalgia, severe neuropathy secondary to diabetes, bilateral hearing loss, previously documented, venous reflux of the legs bilaterally by Dopler, nodular goiter, benign by FNA, depression/anxiety, GERD, and chronic Hepatitis C. He thought it unlikely that plaintiff would ever be able to be gainfully employed again. Her hearing loss precluded her ability to perform her job as an LPN without the other burdens of fibromyalgia and peripheral neuropathy.

The plaintiff was also evaluated by Dr. Ghaith Mitri. He observed that she had been complaining of diffuse arthralgias and myalgias for a couple of years

and that her pain was worse in her legs. She was tender to touch all over. He diagnosed unspecified connective tissue disease with history of arthralgias/myalgias, muscle tenderness, sicca symptoms, and neuronal hearing loss. Differential diagnosis could include Lupus, Lupus-like illnesses, Sjogren's Syndrome, Sarcoidosis, Wegner's or Antiphospholipid Syndrome. In addition, she had neuronal hearing loss which could be secondary to the above, or could be degenerative in nature or possibly due to a history of diabetes. She had chronic fatigue and positive rheumatoid factor with arthralgias, but there was nothing to suggest active rheumatoid arthritis as well as mechanical-type arthalgias and some fibromyalgial features. He believed the hearing loss was due to autoimmune disease.

In December 2002, he diagnosed the plaintiff with fibromyalgia which could be related or on the line of positive Hepatitis C that could lead to a lot of fatigue and diffuse arthalgias and myalgias. He recommended physical therapy, Trazodone, and Flexeril.

The plaintiff has also been followed by the Cherokee Mental Health Systems. She has been diagnosed as suffering from panic disorder without agoraphobia and major depressive disorder/recurrent.

4

Plaintiff was evaluated by Katherine R. Smith, Ph.D., in September 2004. She diagnosed the plaintiff as suffering from major depressive disorder, chronic, moderate, panic disorder without agoraphobia, fibromyalgia and hearing loss. She opined that the plaintiff had a GAF of 65, but noted that plaintiff was likely to miss some work due to depression. She was likely to be depressed, irritable and withdrawn at work and was likely to have concentration difficulties on the job making it hard for her to stay focused on her work for a two-hour period without being interrupted. She might have a hard time adjusting to changes in the work routine due to depression and anxiety.

Plaintiff also underwent a consultative examination and evaluation by Dr. Wayne Page, a family practitioner. He diagnosed the plaintiff as suffering from arthralgias, a history of Hepatitis, and non-insulin-dependent diabetes. He noted that she had no recent care for her musculoskeletal ailment other than Oxycontin and Oxycodone, and that that was not the preferred treatment for musculoskeletal pain. He noted that she was not at maximum medical improvement regarding these allegations and therefore should not be placed on a permanent restriction regarding musculoskeletal ailments. He further found that there were no findings consistent with carpal tunnel syndrome. He noted with regard to fibromyalgia that it is a specific entity that has diagnostic criteria but there were no "trigger points nor any other findings consistent with fibromyalgia." He observed that treatment for fibromyalgia

5

is activity and not inactivity.  Dr. Page further observed that the plaintiff had been diagnosed with Hepatitis C two years earlier but there had been no intervention and no description of any problems related to that allegation.  With respect to her diabetes, Dr. Page noted that it was well controlled.

He further observed that the interview was carried out in normal or below normal voice tones and that the only information that plaintiff requested he repeat was when he was speaking in very low tones.  She had no difficulty hearing normal speech tones.  He further reported that there was no objective evidence of any anxiety or depression and that plaintiff had stopped going for counseling in 2003.  He noted that she was on multiple mood-altering drugs such as Trazodone, Xanax and Effexor XR.  He concluded with a reasonable degree of medical certainty that these pharmacologic agents without appropriate counseling were inappropriate.  Plaintiff declined to attempt heel and toe walking, squatting, toe-touch, leg-lift, and sit-up.

With respect to the plaintiff's subjective allegations, Dr. Page made the following observations:

> When judging the weight to be given to purely subjective complaints such as with this examinee, the reliability and credibility of the examinee is a crucial factor to consider.  I conclude within a reasonable degree of medical certainty,

6

> this examinee has a negative impact on her perceived disability based on lack of treatment and use of controlled substances as described above. I conclude within a reasonable degree of medical certainty, she is not at maximum medical improvement regarding musculoskeletal complaints. She is not at maximum medical improvement regarding hearing deficit, however, she does have normal clinical hearing to normal speech volume, and is therefore not disabled for this allegation.
>
> I conclude within a reasonable degree of medical certainty, this examinee has no credibility. Her purely subjective complaints should therefore be given no weight in making this determination.

R.214.

Finally, Dr. Page opined that the plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, and could stand, walk and sit eight hours a day in an eight-hour day with the usual breaks. (R.214).

The plaintiff appeared at her hearing before the administrative law judge (ALJ) and testified regarding her condition. She testified that she has neuropathy in her lower extremities and pain in her joints. She had quit going to the Cherokee Mental Health Agency because her counselor had left. She had Hepatitis and some hearing loss but now had hearing aids and her hearing was ok. She had pain every day and difficulty grasping and gripping objects. She also testified that she had depression and difficulty maintaining attention and concentration.

A vocational expert, Dr. Robert Spangler, also appeared and testified. He described the plaintiff's past work as a hand packer and assembler between light and medium and unskilled and as an LPN as being light and skilled under the Directory of Occupational Titles, but that the plaintiff described it as heavy and skilled. She had no skills to sedentary that were transferable. Dr. Spangler testified that an individual cannot miss more than one day per month from unskilled work. A GAF of 65 would indicate mild depression. Dr. Spangler was asked to assume an individual of plaintiff's height, weight, education and work background who had the residual functional capacity for light work, but who had Hepatitis C and an emotional disorder with mild to moderate restrictions on her ability to perform work-related work activities and that she needed hearing aids. He testified that there were about 1.4 million light, unskilled jobs in the national economy and 18,000 in the regional economy (or within 150-mile radius of Kingsport).

After reviewing the above evidence, the ALJ made the following relevant findings:

. . .

    5.    The undersigned finds that the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

    6.    The claimant has the residual functional capacity for light work, with an emotional disorder with mild

to moderate restrictions regarding the ability to perform work-related activities; Hepatitis C; and hearing aids with hearing ok.

    7.    The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

    8.    Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Grids and Rules 202.13 and 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy she could perform. Examples of such jobs include work as library clerk helper, janitor, maid, assembler, hand packer and non-construction worker. In the aggregate, there are 114,000 such jobs in the region and 8,922,000 such jobs in the national economy.

. . .

R.24.

## II.

### *Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so

because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

III.

***Application of the Five-Step Evaluation Process***

Disability is evaluated pursuant to a five-step analysis summarized as follows:

>     (1)    If claimant is capable of doing substantial gainful activity, he is not disabled.
>
>     (2)    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof in the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

### *Analysis*

The ALJ reached step five of the five-step evaluation process and concluded that the plaintiff had the residual functional capacity for light work, with an emotional disorder with mild to moderate restrictions regarding the ability to perform work-related activities, Hepatitis C and hearing aids which rendered her hearing

adequate. There is substantial evidence in the record to support that residual functional capacity. For example, there is no question that plaintiff has been diagnosed with Hepatitis C. However, there is no evidence in the record to indicate that, even two years after the diagnosis of that condition, she has had no intervention and no problems alleged related to Hepatitis. With respect to plaintiff's hearing loss, Dr. Page found that the plaintiff gave no indication of being unable to hear normal conversation. Nor is there any evidence of any objective findings with respect to plaintiff's hearing loss. Finally, on the date of the hearing before the ALJ, plaintiff was wearing hearing aids and described her hearing as ok.

With respect to fibromyalgia, Dr. Page observed that there had been no treatment reported or suggested. He noted that plaintiff made complaints of significant pain with even minimal pressure, even though objective testing was negative. He further found, clearly with regard to plaintiff's allegations of pain and disability, that subjectively plaintiff was not a credible source of information. The ALJ, who had the opportunity to observe the plaintiff at the hearing, also found that the plaintiff was not a credible source of information.

With respect to plaintiff's psychological condition, Dr. Katherine Smith noted that, although the plaintiff had reported depression for four or five years, she had been a patient at the Cherokee Mental Health Center for about two years and

12

had not been there fore the past six months. Dr. Page noted no objective evidence of anxiety or depression.

In September 2004, Larry Welch, Ed.D., reviewed plaintiff's records for the state agency. He opined that Ms. Riggs had a moderate restriction of activities of daily living and moderate difficulties in maintaining social functioning. She also had moderate difficulties in maintaining concentration, persistence, or pace. She had no reported episodes of decompensation. As for her residual functional capacity, Dr. Welch indicated only that she was not significantly limited or only moderately limited in each functional ability. She retained the ability to understand, remember, and complete detailed tasks on a regular and continual basis with occasional difficulty. She was able to interact with small groups, on a one-on-one basis, and occasional or superficial, not continual general public interaction. Dr. Welch noted that no major problems with supervisors or co-workers was anticipated and she was able to adapt to routine, not frequent or fast-paced change. She could avoid major hazards and take most transportation independently. She was able to sit and carry out most long-range goals with only occasional assistance.

Based on this evaluation and other evaluations in the record, there is substantial evidence to indicate that the ALJ's description of the plaintiff with "an

emotional disorder with mild to moderate restrictions regarding the ability to perform work-related activities" is supported by substantial evidence in the record.

Based on the foregoing, I conclude that the ALJ's finding with regard to plaintiff's residual functional capacity is supported by substantial evidence in the record.

With respect to the ALJ's finding that there are 8,922,000 jobs in the national economy and 114,000 jobs in the regional economy which the plaintiff can perform, those numbers are in disagreement with the vocational expert's opinion. The vocational expert actually testified that there are 1,400,000 in the national economy which a person with plaintiff's limitations could perform and 18,000 in the regional economy. The standard which controls is that of the national economy. *See* 20 CFR § 404.1466. In any case, 1,400,000 jobs in the national economy can be considered a significant number. *See Hull v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The ALJ's erroneous citation to the number of jobs in the national economy is harmless error.

In light of the foregoing, the conclusion of the ALJ that the plaintiff is not under a "disability" as defined by the Act is supported by substantial evidence in the record.

V.

*Plaintiff's Assignments of Error*

The plaintiff has raised three major assignments of error: (1) that the hypothetical presented to the vocational expert did not accurately portray plaintiff's residual functional capacity; (2) that the vocational expert's testimony was unclear as to how many jobs there were that plaintiff could perform; and (3) that the ALJ erred in disregarding the opinion of plaintiff's treating physician, Dr. Spangler. The court will consider each of these arguments in turn.

Initially, plaintiff argues that the hypothetical presented to the vocational expert was inaccurate in that it described plaintiff's mental limitations as "mild to moderate." The court is of the opinion that this characterization is consistent with the psychiatric evidence of record. Dr. Smith diagnosed major depressive disorder, chronic, moderate; and panic disorder without agoraphobia. Even with that diagnosis, all that Dr. Smith noted was that plaintiff "might" miss some work due to depression and "might" have concentration difficulties. Dr. Welch, who reviewed plaintiff's records, checked either "not significantly limited" or only "moderately limited" in each functional area. He opined that the plaintiff retained the ability to understand, remember and complete detailed tasks on a regular and continual basis with occasional difficulty sustaining concentration, persistence, and pace. Based on

15

this opinion, the court concludes that the ALJ reasonably found that the plaintiff had only mild to moderate restrictions.

Plaintiff claims it is unclear from Dr. Spangler's testimony how many jobs in the national economy he opined plaintiff was capable of performing. The court disagrees. A review of Dr. Spangler's testimony in the case states his opinion was that there were 1,400,000 jobs in the national economy which the plaintiff could perform as well as 18,000 in the regional economy. Plaintiff also contends that the vocational expert's testimony did not comply with Social Security ruling 00-4p in that the ALJ failed to inquire whether the vocational expert's testimony was consistent with the Directory of Occupational Titles. However, the vocational expert started his testimony by referring directly to the DOT in describing Ms. Riggs' past relevant work. He also referred to the national standard and noted how many days of work per month an individual could miss. Further, his testimony indicates that he was fully aware that the number of jobs which he cited or classified as medium indicated his awareness of the DOT listing. Nor is there anything in the record to indicate that plaintiff's counsel objected to his testimony or pointed out any inconsistency with that testimony and the DOT.

Finally, plaintiff contends that it was error for the ALJ to discount the opinion of Dr. Spangler, plaintiff's treating physician, that the plaintiff was totally and

16

permanently disabled from any type of employment. The United States Court of Appeals for the Sixth Circuit has repeatedly held that the opinions of treating physicians are entitled to great weight and generally entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only one occasion. *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992). However, the ultimate determination of disability is the prerogative of the Commissioner, not the treating physician, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). With respect to the weight afforded Dr. Spangler's opinion, the ALJ is not bound by any physician's assessment and may reject unsupported opinions, *see Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988), because the weight to be given any physician's opinion depends on the extent to which it is supported by medical data and other evidence of record. 20 CFR §§ 404.1527(d)(3), 416.927(d)(3). In this case, Dr. Spangler's opinion simply was not supported by the objective medical evidence.

With respect to plaintiff's hearing loss, there was no objective evidence presented with respect to the extent of that loss. In any event, the record shows that the hearing loss was cured by the use of hearing aids. With respect to plaintiff's diabetes and Hepatitis C, the objective medical evidence indicates that those conditions were under control and would have no effect on her residual functional capacity.

17

With respect to plaintiff's fibromyalgia, a simple diagnosis of that condition based solely on plaintiff's subjective complaints of pain does not support a finding of disability, particularly in this case where both a consulting physician and the ALJ found plaintiff's subjective allegations to be not credible. The court finds that, under the circumstances, the ALJ's rejection of the conclusory opinion of the treating physician was not error.

VI.

*Conclusion*

In light of the foregoing, plaintiff's motion for judgment on the pleadings [Court File #11] is DENIED; defendant's motion for summary judgment [Court File #15] is GRANTED; and the final decision of the defendant Commissioner is AFFIRMED.

Enter judgment accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE